**In re the Matter of Michael P. RYAN.**

**Nos. 87 C 3112, 84 B 2138 and 84 B 5455.**

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1987.

---

James J. Muench, Muench & Muench, Chicago, Ill., for appellant.

Steven J. Roeder, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for appellee.

### MEMORANDUM OPINION

GRADY, Chief Judge.

This petition for attorney's fees is before us on appeal of James J. Muench ("Muench") from the Bankruptcy Court's order denying fees. The appeal concerns a question of law of first impression in this circuit. Other courts have addressed this precise question, however, and the majority view is that an attorney may not be compensated out of the funds of the bankruptcy estate unless his work benefits the estate. We adopt this majority view and affirm the ruling of the bankruptcy court.

### FACTS

This fee petition arises from a Chapter 7 bankruptcy. An involuntary bankruptcy petition was filed against Michael P. Ryan ("Ryan" or "debtor") on February 21, 1984. At all times relevant to this case Ryan was incarcerated in the Federal penitentiary at Lexington, Ky. Appellant's Brief at 2. Subsequently, on April 26, 1984, Ryan filed a voluntary Chapter 7 petition in Kentucky. The Kentucky proceeding was transferred to Chicago, and the two cases were consolidated. Ryan's attorney, who was not admitted to practice in this court, then sought to withdraw from the case.

In early March, 1985 Ryan wrote to Bankruptcy Judge Edward Toles, to whom the case was then assigned. In his letter Ryan stated that he was indigent and requested the bankruptcy judge to appoint counsel for him. Judge Toles' law clerk responded on April 11, 1985, with a suggestion that Ryan might find an attorney through the Chicago Bar Association. The letter also listed nine adversary proceedings pending against Ryan. These consisted of six dischargeability complaints, 11 U.S.C. § 523(a), and three complaints objecting to discharge, 11 U.S.C. § 727. On May 3, 1985, Susan M. Franzetti, an attorney for the Trustee in bankruptcy, wrote a letter to Ryan stating in part

> At the request of the Honorable Judge Edward B. Toles of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, I am writing to inform you that there are presently funds in this bankruptcy estate in the total amount of $33,235.49.... Judge Toles also has requested that I inform you that should you retain an attorney to represent you in this proceeding, your attorney may apply to the bankruptcy court for payment of reasonable legal fees and expenses out of the funds held in this bankruptcy estate.

Petition for Fees, Exhibit B at 1 ("Franzetti Letter").

The Chicago Bar Association referred Ryan's case to Appellant Muench. Muench states he read the Franzetti Letter in the court file and relied upon it. Muench was

granted leave to substitute as counsel to Ryan on August 12, 1985. At that time, the Travelers Express Company, Inc. ("Travelers"), one of Ryan's creditors, served on Muench its objection to his petition for leave to substitute as counsel to Ryan, and "objected to Muench being compensated out of the funds of the bankruptcy estate for any defense of Ryan in the various adversary proceedings objecting to Ryan's discharge and seeking to determine the dischargeability of Ryan's debts." Brief of Trustee at 1–2.

Upon the retirement of Judge Toles, the Ryan case was transferred to Judge Thomas James. Judge James denied Muench's petition for fees for the 85 hours spent successfully defending debtor from the complaints to deny discharge and the complaints to determine dischargeability. This court granted leave to appeal.

The relevant statute is 11 U.S.C. § 330,

(a) After notice to any parties in interest and ... a hearing, ... the court may award to a trustee, to an examiner, to a professional person employed under section 327 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title;

(2) reimbursement for actual, necessary expenses.

The bankruptcy court stated that it was denying Muench's fee petition for time spent defending debtor from dischargeability complaints because it was adopting the rationale of *In re Rhoten*, 44 B.R. 741, 743 (Bankr.M.D.Tenn.1984),

[T]he services performed benefit the debtor personally and not the estate. Legal services which only benefit the debtor personally and which do not relate to the debtor's administrative responsibility are generally not compensable out of the estate in a Chapter 7 case.

*In the Matter of Miller v. Ryan*, No. 84 A 1396, Tr. at 22 (Bankr.N.D.Ill. Jan. 21, 1987) (James, J.).

Muench argues that the Bankruptcy Court misconstrued § 330, or that the special circumstances of this case require an exception to the general rule, and that the Franzetti letter, and other documents in the court file which can be read to suggest that fees might be payable from the bankruptcy estate, estop the court from denying him fees.

DISCUSSION

This court has jurisdiction under 28 U.S. C. § 1334; Bankruptcy Rules 8001, 8002, 8004. We accept the bankruptcy court's findings of fact unless "clearly erroneous," but we decide questions of law *de novo* and reach conclusions independently. *In re Ebbler Furniture & Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986).

*Attorney's Fees under 11 U.S.C. § 330*

This appeal raises a classic problem in statutory construction: read absolutely literally, 11 U.S.C. § 330 supports appellant's entitlement to reasonable fees if his services were necessary. The statute permits the bankruptcy court to make awards of fees and costs to a trustee, an examiner, a professional person, *or* to the debtor's attorney. These awards are to be based on "reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services and the cost of comparable services other than in a case under this title" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330. On its face this language invites a bankruptcy court to consider whether the attorney's services were "necessary" and to pay fees out of the estate if they were. (This reading does raise the further question of to whom the services should be necessary—the debtor or the estate.)

So far as we are aware, no court has chosen to read 11 U.S.C. § 330 literally since its enactment in the 1978 Bankruptcy Reform Act ("Bankruptcy Code"). Instead, all the decisions interpreting § 330

of the Bankruptcy Code carry over the near-unanimous view of prior Bankruptcy Act cases that, as a matter of law, attorneys may recover fees from the estate only if their labors actually benefitted the estate. *E.g. In re Moore,* 57 B.R. 270, 271 (Bankr.W.D.Okla.1986); *Matter of Zweig,* 35 B.R. 37, 38 (Bankr.N.D.Ga.1983); *In re Rosen,* 25 B.R. 81 (Bankr.D.S.C.1982).

The pre–1979 [1] cases which held that attorneys may recover fees from the estate only if the attorney's services actually benefitted the estate reached this result by interpreting § 330's predecessor statute, § 64(b)(3) of the Bankruptcy Act (originally codified at 11 U.S.C. § 104(b)(3)). The leading case was probably *In re Rothman,* 85 F.2d 51 (2d Cir.1936). *Rothman* rests on a careful parsing of § 64(b)(3)'s opening clause, "The cost of administration, including ...," which the Second Circuit read as "giving color to the character of the services for which a fee may be allowed to the bankrupt's attorney." *Id.* at 53. Therefore, the court reasoned

> it is clear the services relating to the discharge are excluded, for the prosecution of the bankrupt's application therefore is a collateral matter which does not pertain to the administration of the estate. While one of the prime purposes of the act is to relieve an honest debtor from the burden of his debts, such relief is a privilege personal to him, which he may seek or not as he pleases, and administration of his estate may be concluded before he has even applied for a discharge.

*Id.* Subsequent cases generally adopted the *Rothman* rule or came to a similar conclusion. *E.g., Matter of Jones,* 665 F.2d 60 (5th Cir.1982) (applying pre–1979 Bankruptcy Act); *Lewis v. Fitzgerald,* 295 F.2d 877 (10th Cir.1961), *cert. denied,* 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 793 (1962). *Contra In re Gray,* 7 Collier Bankr.Cas. 571 (Bankr.N.D.Me.1975). So far as we are aware, the issue has not been addressed by any case in this district, before the Seventh Circuit, or before the Supreme Court.

In 1936, at the time *Rothman* was decided, § 64(b)(3) of the Bankruptcy Act was codified as 11 U.S.C. § 104(b)(3). The Chandler Act of June 22, 1938 amended the section and the clause was recodified as 11 U.S.C. § 104(a)(1). 11 U.S.C. § 104(a)(1) (1940) permitted recovery of

> ... the costs and expenses of administration, including the trustee's expenses in opposing the bankrupt's discharge ... and one reasonable attorney's fee, for the professional services actually employed, to the petitioning creditors in involuntary cases and to the bankrupt in voluntary and involuntary cases, as the court may allow;

This language remained materially unchanged until the adoption of the Bankruptcy Code.

The reception of the *Rothman* rule into the construction of § 330 is slightly troubling for two reasons. First, § 330 is not precisely the successor of § 104(a). This honor belongs to 11 U.S.C. § 503 (Allowance of administrative expenses). *See* Historical and Revision Notes following 11 U.S.C.A. § 503 (1979). Second, although § 503 covers the costs of administration in language somewhat similar to the old § 104(a), § 330 does not. In other words, as far as § 330 is concerned, the textual rationale for the *Rothman* rule no longer exists. Section 330 of the Bankruptcy Code does not begin with the qualifying phrase, "The cost of administration, including." Section 330 does appear in Chapter 3, a part of Title 11 concerned with case administration, but it is in Subchapter II, "Officers."

■ Despite these two problems, we agree with the majority of courts that attorneys may not recover fees unless their work benefits the estate. Appellant has cited no evidence that Congress intended to overrule the *Rothman* construction of the former § 104(a), nor has our own brief foray into the legislative history of § 330 disclosed any such intention. *See* 1978 U.S.Cong.Code & Admin.News, 92 Stat. 2564, 2604; *see also* 1984 U.S.Cong.Code & Admin.News 576; 1986 U.S.Cong.Code &

---

**1.** 11 U.S.C. § 104(a)(1), the Bankruptcy Act fee statute, was repealed effective Oct 1, 1979.

Admin.News 5227, 5240. Nor is there reason to suspect that this lack of evidence of a desire to change the *Rothman* rule is the result of Congressional inattention to the effect of judicial decisions. The 1978 legislative history noted that one of its goals was to overrule *Massachusetts Mutual Life Ins. Co. v. Brock*, 405 F.2d 429, 432 (5th Cir.1968) (capping attorneys' fees payable in bankruptcy cases), *cert. denied sub nom. Brock v. Massachusetts Mutual Life Ins. Co.*, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969). *See* 1978 U.S.Cong. Code & Admin.News, 92 Stat. 2564; Historical and Revision Notes following 11 U.S.C. A. § 330 at 278 (1979). Allowing attorneys to collect fees from the bankruptcy estate for their defense of debtors against creditors' dischargeability complaints might enhance the debtors' opportunity for a "fresh start" under the Bankruptcy Code. It would do so, however, at the cost of leaving less—perhaps far less—of the bankruptcy estate to be distributed among creditors. The Bankruptcy Code mediates between the interests of debtors and creditors, and despite the language of § 330 we are not convinced that Congress intended to change the view prevailing in 1978. We will not allow fees on these facts in the absence of any reason to believe that Congress intended to allow payment from the estate for services which only benefit the debtor personally.

*Reliance*

█ Appellant seeks to make a case for equitable estoppel or reliance on the Franzetti *Letter or other correspondence in the* court file. This argument raises an issue of fact which was not raised before the bankruptcy court and thus is not properly before this court. In any event, this claim is baseless, and would be baseless even if Travellers had not objected to Muench being compensated out of the funds of the bankruptcy estate for any defense of Ryan in the various adversary proceedings. If the Bankruptcy Code does not give a judge authority to order payment of certain fees from a bankruptcy estate then *a fortiori* it does not give him the authority to promise to enter such an order. Further, the doc-

trine of equitable estoppel applies to litigants, not courts. The closest comparable doctrine is perhaps law of the case, and since there is no ruling in Muench's favor he cannot avail himself of it.

CONCLUSION

We affirm the Bankruptcy Court's denial of appellant's fee petition.